**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 19-cr-77-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    **GILBERT KYGER,**

    Defendant.

---

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

---

Before the Court is Defendant's Motion for Compassionate Release. (ECF No. 47.) For the reasons explained below, the Court denies this motion.

### I. BACKGROUND

On June 19, 2019, Defendant Gilbert Kyger ("Kyger") pleaded guilty to possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). (*See* ECF No. 21.) On August 28, 2019, the Court sentenced him to 32 months' imprisonment. (ECF Nos. 40–41.)

The Bureau of Prisons ("BOP") currently houses Kyger at FCI Sheridan, in Sheridan, Oregon. (ECF No. 47 at 1.) He states, and the Government does not contest, that his "projected release date is June 4, 2021, so he has now served all but roughly 12 months of his sentence." (*Id.*)

Kyger filed the motion currently at issue on June 23, 2020. As of that date, there were "no reported COVID-19 infections at his facility." (*Id.* at 2.) Kyger nonetheless

argues that "it is only a matter of time" (*id.*), and that he is at particular risk for a severe case of COVID-19 because he "suffers from asthma" (*id.* at 15).

In response, the Government argues that Kyger's asthma does not appear to be a particular threat, and that Kyger is otherwise not a proper candidate for compassionate release. (ECF No. 50 at 6–9.)

In reply, Kyger submits additional information about his asthma, and further notes that FCI Sheridan now reports one positive case of COVID-19 among the inmate population as of the date of the reply brief (July 10, 2020). (ECF No. 52.)

Kyger asks that the Court resentence him to "time served and 12 months of home confinement." (*Id.* at 12.)

## II. ANALYSIS

Kyger invokes the Court's authority to grant what is commonly referred to as "compassionate release." The statutory basis for compassionate release is as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are

---

[1] The Government does not contest that Kyger submitted a proper request and received no response within 30 days. (*Compare* ECF No. 47 at 11–12 *with* ECF No. 50.)

>    applicable, if it finds that—
>
>    >   (i) extraordinary and compelling reasons warrant such a reduction; or
>    >
>    >   (ii) the defendant is at least 70 years of age [along with various other conditions not relevant here];
>
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

In short, to have Kyger released from confinement immediately under this authority, the Court would need to re-sentence Kyger to time served (as of today, about 21 months, instead of 32). To merit such relief, Kyger must first demonstrate "extraordinary and compelling reasons" that are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) & (c)(1)(A)(i).

One Sentencing Commission policy statement that appears potentially relevant here is the following:

>    [E]xtraordinary and compelling reasons exist [if] * * * [t]he defendant is—
>
>    >   (I) suffering from a serious physical or medical condition,
>    >
>    >   (II) suffering from a serious functional or cognitive impairment, or
>    >
>    >   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. 1(A)(ii). Kyger argues that his asthma is a serious medical condition from which he is not expected to recover, and that it substantially diminishes

3

his ability to provide self-care within the environment of a correctional facility because he cannot socially distance in prison.  (ECF No. 47 at 19–20.)

Assuming for the sake of argument that Kyger's asthma is sufficiently "serious" for purposes of subparagraph (I), Kyger is nonetheless misreading the "ability . . . to provide self-care" clause.[2]  Kyger essentially reads the policy statement backwards, where it is "the environment of a correctional facility" that "diminishes the ability of the defendant to provide self-care" for his or her "serious physical or medical condition."  But the causal chain in the policy statement flows in the other direction.  It is the serious condition that must substantially diminish the ability to provide self-care in prison.  There is nothing about asthma itself that diminishes Kyger's ability to care for himself in prison.  Thus, this part of the policy statement does not apply.[3]

The same policy statement, however, contains a safety valve for unexpected circumstances specific to the inmate: "[E]xtraordinary and compelling reasons exist [if] * * * [a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons [explicitly set forth]."  *Id.* cmt. 1(D).  Under this authority, the presence of COVID-19 and the inability to socially distance within the prison environment is conceivably an "extraordinary and compelling reason," in combination with Kyger's alleged susceptibility to a severe infection due to asthma.

---

[2] He may also be misreading the "not expected to recover" clause, but the Court need not address that under the circumstances.

[3] The Court recognizes that other courts have accepted Kyger's interpretation.  See *United States v. Amarrah*, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020); *United States v. Atkinson*, 2020 WL 1904585, at *3–4 (D. Nev. Apr. 17, 2020); *United States v. Esparza*, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020).  For the reasons explained above, the Court disagrees with these decisions.

4

The question, then, is whether Kyger's asthma creates a large enough risk of serious symptoms or death, should he contract COVID-19. The Centers for Disease Control and Prevention ("CDC") currently lists "Asthma (moderate-to-severe)" as a condition that "might" place a person "at an increased risk for severe illness from COVID-19," in contrast to other conditions (*e.g.*, chronic obstructive pulmonary disease) which unequivocally place someone at increased risk. CDC, "People of Any Age with Underlying Medical Conditions," *at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated June 25, 2020) ("CDC Guidance").

Kyger offers the following evidence to prove that his asthma is sufficiently severe:

- a record of an October 14, 2011 emergency room visit for persistent cough, which the physician diagnosed as bronchitis (attributed to smoking) and prescribed an inhaler, an oral corticosteroid, and antibiotics (ECF No. 47-7); and

- a record of January 9, 2020 visit with a BOP physician where Kyger requested "an inhaler prior to exercise"—which the physician prescribed, but noted, "Don't use daily (This is a RESCUE inhaler). . . . Inhale 2 puffs (two minutes apart) by mouth four times daily AS NEEDED to prevent/relieve asthma attack" (ECF No. 52-1 at 2, 6).

These documents do not show that Kyger has "moderate-to-severe" asthma, as those conditions are classified by the CDC. The CDC uses the asthma severity classifications established by National Asthma Education and Prevention Program (a program within the National Heart, Lung and Blood Institute, a division of the National Institutes of Health). *See* 42 U.S.C. § 285b-7b; *see also* National Asthma Education

5

and Prevention Program (NAEPP), *at* https://www.nhlbi.nih.gov/science/national-asthma-education-and-prevention-program-naepp (last visited July 16, 2020).  For initial diagnoses, the classifications are as follows:

| **Classification** | **Days with symptoms** | **Nights with symptoms** |
| --- | --- | --- |
| Mild intermittent | ≤2/week | <2/month |
| Mild persistent | >2/week, but <1 time/day | >2/month |
| Moderate persistent | Daily | >1/week |
| Severe persistent | Continual | Frequent |

*See* Seymour G. Williams et al., "Key Clinical Activities for Quality Asthma Care: Recommendations of the National Asthma Education and Prevention Program," *Morbidity and Mortality Weekly Report: Recommendations and Reports*, Mar. 28, 2003 (vol. 52, no. RR-6), at 4 (table 2), *available at* https://www.cdc.gov/mmwr/PDF/rr/rr5206.pdf (last accessed July 16, 2020).

"After the patient's asthma is stable, severity is subsequently classified according to the level of medication required to maintain treatment goals."  *Id*. at 4.  In that context, the classifications are as follows:

| **Classification** | **Daily medication** | **Quick relief medication** |
| --- | --- | --- |
| Mild intermittent | No daily medicine needed | As needed |
| Mild persistent | Low-dose inhaled steroids | As needed |
| Moderate persistent | Low-to-medium-dose inhaled steroids | As needed |
| Severe persistent | High-dose inhaled steroids | As needed |

*See id*. at 5 (table 3).

6

These definitions show that Kyger's asthma is likely "mild intermittent," or "mild persistent" at worst.  More specifically, applying the above classifications to Kyger, he has put forward no evidence that he has ever been prescribed inhaled steroids (of any dosage) to be taken on a daily basis.  To the contrary, his most recent inhaler prescription says, "Don't use daily . . . ."  (ECF No. 52-1 at 6.)  Thus, he is not someone with "moderate-to-severe" asthma who "might" be at greater risk of a severe case of COVID-19.  CDC Guidance, *supra*.

Accordingly, the presence of COVID-19 and the inability to socially distance within the prison environment is not, in Kyger's case, an "extraordinary and compelling reason" to consider reducing his sentence.  U.S.S.G. § 1B1.13 cmt. 1(D).  Thus, resentencing Kyger to time served would not be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c).  The Court therefore need not evaluate whether reducing Kyger's sentence to time served would be justifiable under the 18 U.S.C. § 3553(a) factors.

### III.  CONCLUSION

For the reasons set forth above, Kyger's Motion for Compassionate Release (ECF No. 47) is DENIED.

Dated this 17th day of July, 2020.

BY THE COURT:

William J. Martinez
United States District Judge